## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **GREENVILLE VENTURES LLC,** | : | **CIVIL ACTION** |
| *Plaintiff,* | : | |
| | : | |
| **v.** | : | |
| | : | |
| **JAMES JANNUZZIO, et al.,** | : | |
| *Defendant.* | : | **NO. 22-3214** |
| | : | |
| **JAMES JANNUZZIO, et al.,** | : | |
| *Third Party Plaintiffs,* | : | |
| | : | |
| **v.** | : | |
| | : | |
| **GREENVILLE VENTURES LLC,** | : | |
| *Nominal Counter Defendant,* | : | |
| | : | |
| **and** | : | |
| | : | |
| **PETER C. DANBY, et al.,** | : | |
| *Third Party Defendants.* | : | |

## DISCOVERY ORDER

1.      In this action, Plaintiff Greenville Ventures LLC ("Greenville") has asserted unfair competition and related claims against the Defendants, three of whom were employees of Greenville, and two of whom (Mr. James Jannuzzio and Mr. Trevor Nix) owned minority interests in Greenville. Greenville contends that the Defendants improperly used Greenville's trade secrets and confidential information to create a jewelry business that competes with Greenville. Greenville has also alleged that certain of the Defendants violated various federal statutes by continuing to access their Greenville email accounts after they resigned from their employment with Greenville.

2.      Defendants have asserted counterclaims and third-party claims against Mr. Peter Danby and others for, among other things, alleged breaches of fiduciary duty and oppression of the interests of Mr. Jannuzzio and Mr. Nix as minority owners of Greenville. Mr. Danby controls

Greenville through his 100% ownership of an entity that owns the majority of the equity interests in Greenville.

3.      This order analyzes attorney-client privilege and work product doctrine issues raised by the fact that Defendant Jannuzzio and his current and former legal counsel used Mr. Jannuzzio's Greenville email account to send and receive approximately 70 communications to one another after Mr. Jannuzzio's resignation as a Greenville employee on May 24, 2021. According to Defendants' privilege log, these attorney-client communications occurred for more than a year between June 1, 2021 and July 12, 2022.

4.      The possibility of litigation between the parties was apparent immediately after Mr. Jannuzzio's resignation. For example, in his May 26, 2021 email responding to Mr. Jannuzzio's resignation, Mr. Danby referred to Mr. Jannuzzio's alleged fiduciary duty and made demands on Mr. Jannuzzio that he relinquish control over Greenville's email accounts and social media assets. Mr. Jannuzzio did not comply with certain of Mr. Danby's demands. As noted above, the privilege log confirms that Mr. Jannuzzio consulted with legal counsel no later June 1, 2021 (one week after his resignation).  In any event, counsel for Greenville, Mr. Danby and Mr. Jannuzzio made demands and asserted claims on behalf of their respective clients in letters dated July 14, 2021 and July 20, 2021.

5.      Defendants plausibly maintain that the attorney-client communications involved here were for the purpose of obtaining (or giving) legal advice about anticipated litigation— the very claims and issues that ultimately resulted in this case and the related litigation between the parties (Civil Action Nos. 22-1132 and 1189 in this Court).  Accordingly, the communications may be protected by both the attorney-client privilege and the work product doctrine *if* Mr. Jannuzzio and his counsel had an objectively reasonable belief that their communications would

remain confidential and, therefore, privileged, notwithstanding the fact that they used a Greenville email account to send and receive them.

6.     Based on my review of the privilege log, which listed a total of 102 documents (including attachments to the attorney-client emails), the documents on which the Defendants claim privilege fall into two categories. Some (apparently only a few) would disclose advice given by Defendants' prior and current counsel or perhaps reveal substantive communications by the clients pertaining to that advice. But the majority of the documents on the privilege log (67 of the 102 documents by my count) appear by the descriptions on the log to be nothing more than transmittal emails devoid of any content in which Mr. Jannuzzio simply forwarded to his lawyers or attached non-privileged emails that he obtained from the Greenville email accounts over which he retained control after his resignation as an employee.

7.     To be sure, the fact that Mr. Jannuzzio sent the forwarded and attached emails to his lawyers would lead one to believe that either he or his lawyers regarded those documents as relevant. But production of the transmittal emails, attachments and forwarded emails would not disclose anything about why the lawyer or the client may have regarded them as relevant or what they may have said to one another about them.

8.     It is true that attachments to emails sent by a client to lawyer (or by a lawyer to a client) are sometimes privileged because disclosure of them may reveal the substance of the privileged communication. But Greenville and Mr. Danby are entitled to see the transmittal emails involved here (assuming they contain no substantive communications between attorney and client) and also the attachments and forwarded emails that were transmitted. Mr. Jannuzzio used his control over the Greenville email accounts to obtain non-privileged Greenville documents. This was the digital equivalent of Mr. Jannuzzio using a key to go into Greenville's

-3-

office, making copies of certain documents in the office and sending them to his lawyers. Sending documents from an opponent's email server to your own lawyer does not make them privileged. It is the communications between the client and the lawyer about those documents, which may have occurred before or after the transmittal emails, that are protected by attorney-client privilege and the work product doctrine.

9.      In this Order, I will summarize the relevant facts and analyze the legal issues under the attorney-client privilege and work product doctrine. As explained below, I have concluded that the emails exchanged by Mr. Jannuzzio and his counsel using his Greenville email account are protected by the attorney-client privilege and, in certain instances, by the work product doctrine. But there are two important exceptions. First, emails in which Mr. Jannuzzio merely transmitted non-privileged emails from the Greenville email accounts to his lawyers— without any discussion by the client or the lawyers about the attachments or forwarded emails— are not privileged and must be produced. The attached and forwarded Greenville emails themselves are likewise not protected and must be produced. Second, as will be explained below, Mr. Jannuzzio and his counsel chose to reveal certain legal advice during his deposition. If any of the emails listed on the privilege log pertain to that advice, they are not privileged and must be produced.Therefore, this privilege dispute may have limited practical significance because the number of emails that are actually privileged attorney-client communications may prove to be quite small.

## A.      Facts

10.      Mr. Jannuzzio submitted his resignation as a Greenville employee to Mr. Danby in emails dated May 24, 2021 and May 25, 2021.  Among other things, Mr. Jannuzzio sought to negotiate a buy-out of his 25% minority interest in Greenville in those emails.

11.     Mr. Danby responded in an email dated May 26, 2021. In that email, Mr. Danby demanded that Mr. Jannuzzio relinquish and return to Mr. Danby (or Greenville) administrative control over the Greenville email accounts, which Mr. Jannuzzio controlled at that time, and that he likewise relinquish his control over Greenville social media assets.

12.     Mr. Jannuzzio did not comply with Mr. Danby's demand to relinquish administrative control over the Greenville email accounts. For a period of 18 months following Mr. Jannuzzio's resignation, Greenville and Mr. Danby took no action to exercise any legal remedy to compel Mr. Jannuzzio to relinquish control over the Greenville email accounts. Throughout that period, Mr. Jannuzzio remained the sole administrator of Greenville's master email account.

13.     Even after the parties and related entities commenced related litigation against one another in this Court on March 24, 2022 (Civil Action No. 22-1132) and after Greenville commenced this action on August 12, 2022, Greenville and Mr. Danby still took no action to require Mr. Jannuzzio to relinquish his control over the Greenville email accounts.

14.     The issue of Mr. Jannuzzio continuing to have administrative control over Greenville's email accounts finally arose when counsel for Mr. Jannuzzio and the other Defendants served requests for production of documents in this action calling for, among other things, production of all emails that Mr. Jannuzzio or any other defendant sent or received from their Greenville email accounts at any time during the course of their employment with Greenville and without any limitation on the subject matter or date of the emails. *See* December 30, 2022 Discovery Order at ¶9.

15.     Counsel for Greenville realized then that Greenville did not have control over its email accounts and, therefore, could not produce its own emails. Accordingly, counsel for

Greenville sought an order requiring Mr. Jannuzzio to relinquish control and return administrative access to Greenville's master email accounts, after which Greenville would produce all relevant and discoverable emails. *See* December 30, 2022 Discovery Order at ¶12. Mr. Jannuzzio and the other defendants opposed Greenville's request and instead sought an order authorizing the Defendants to continue to use Mr. Jannuzzio's status as sole administrator of the Greenville master email accounts to access the Greenville emails and produce to all parties the emails that Defendants sought. That dispute became one of the subjects addressed during a hearing that I conducted on December 29, 2022, which resulted in the December 30, 2022 Discovery Order.

16.     During the December 29, 2022 hearing, the parties substantially reached agreement that control over the Greenville email accounts should be returned to Greenville. In any event, I ordered Mr. Jannuzzio to "as soon as reasonably possible relinquish and return to Greenville exclusive access to Greenville's master email account". *See* December 30, 2022 Order at ¶13.

17.     Counsel for Mr. Jannuzzio and the other Defendants did not raise any issue of privilege during the December 29 hearing. They contend that their production of the attorney-client emails by returning control of the email accounts to Greenville in response to the December 30 Discovery Order was an inadvertent production of privileged documents, apparently because they did not remember Mr. Jannuzzio's use of his Greenville email account for some attorney-client communications.

18.     After Mr. Jannuzzio complied with the December 30 order by restoring administrative control of the email accounts to Greenville, counsel for Greenville noticed that Mr. Jannuzzio and his counsel had communicated with one another using Mr. Jannuzzio's

Greenville email account. In compliance with this Court's Order on inadvertent disclosure of privileged information, counsel for Greenville appropriately informed counsel for Defendants of this in an email dated February 6, 2023. In that email, counsel for Greenville stated that they had not reviewed the emails between Mr. Jannuzzio and his counsel and asked whether Defendants maintained that the emails were privileged.

19.     In response to a request by counsel for the Defendants, counsel for Greenville provided them with access to the attorney-client emails, which counsel for the Defendants reviewed. Counsel for the Defendants asserted privilege as to all of them. Counsel for Greenville responded that Mr. Jannuzzio's use of his Greenville email account to have the attorney-client communications precludes any claim of attorney-client privilege or work product doctrine protection.

20.     The parties argued this privilege dispute in letter briefs and during oral argument on March 28, 2023.  During that argument, I required counsel for the Defendants to submit a privilege log with respect to the communications that were conducted between Mr. Jannuzzio and his prior and current legal counsel using Mr. Jannuzzio's Greenville email account. Defense counsel served the privilege log on April 10, 2023 and, in response to a request I made for additional information, served an amended privilege log on April 12, 2023.

## B.     Attorney-Client Privilege

21.     The privilege log provides sufficient support Mr. Jannuzzio's contention that certain emails he sent to (and received from) his legal counsel using his Greenville email account were for the purpose of obtaining (or providing) legal advice about his dispute with Greenville, Mr. Danby and the other third-party defendants. The attorney-client privilege protects confidential communications made by a client to a lawyer (or by a lawyer to the client) for the

purpose of obtaining legal advice or assistance in a legal proceeding. *See in re Grand Jury Investigation,* 599 F.2d 1224, 1233 (3d Cir. 1979).   The critical question for purposes of determining the applicability of attorney-client privilege to the emails involved here is whether the use of Mr. Jannuzzio's Greenville email account defeats the claim of privilege.

22.     Although the Third Circuit apparently has not yet addressed the issue, many federal courts have analyzed whether an employee who uses a workplace email account controlled by his or her employer to conduct communications with the employee's legal counsel is entitled to attorney-client privilege with respect to those communications.  The most frequently cited case is *In re Asia Global Crossings, Ltd*., 322 B.R. 247, 258-259 (Bankr. S.D.N.Y. 2005) ("[T]he question of privilege comes down to whether the intent to communicate in confidence was *objectively reasonable* . . . . Accordingly, the *objective reasonableness* of that intent will depend on the company's email policies regarding use and monitoring, its access to the email system, and the notice provided to the employees") (emphasis added).

23.     The *Asia Global* Court and the many courts that have followed its approach focus on four factors in assessing the objective reasonableness of the employee's belief that the communications with counsel would remain confidential:

(1) whether the employer prohibited use of the company's email accounts for personal communications;

(2) whether the employer had a practice of monitoring employee email communications using the company's email accounts;

(3) whether third parties had access to employees' emails using the company's email accounts; and

(4) the extent to which the employee had notice of any such restrictions by the employer

on use of the company email accounts. *Asia Global, supra,* 322 B.R. at 257. In cases in which

the employer had no such policies or when the employer's enforcement of them was lax, many

courts have sustained the employee's claim of privilege. *See, e.g., United States v. Nagle,* 2010

U.S. Dist. LEXIS 104711, 2010 WL 3896200 *4 (M.D. Pa. September 30, 2010) (Rambo, J.)

24.      Courts following the *Asia Global* approach have emphasized that the question of

whether an employee had an objectively reasonable expectation of confidentiality sufficient to

maintain attorney-client privilege while using an employer's email account to conduct

communications with the employee's counsel "must be addressed on a case-by-case basis" based

on the facts of the particular case. *See, e.g., Jordan v. Temple Univ. Health Sys*. 2017 U.S. Dist.

Lexis 232717 at fn. 1, 2017 WL 11551387 (E.D. Pa. Aug. 9, 2017) (Quinones Alejandro, J.). *See

also In re Reserve Fund Securities and Derivative Litigation,* 275 F.R.D. 154, 160 (S.D.N.Y.

2011).

25.      The *Asia Global* Court's emphasis on the "objective reasonableness" of the

employee's belief that he or she can conduct a confidential communication using the employer's

email account system is plainly correct. It has always been an essential element of the attorney-

client privilege that the communication between the client and the attorney occur under

circumstances in which it is reasonable to believe that confidentiality will be maintained. *See,

e.g., Rhone-Poulenc Rorer, Inc. v. Home Indemnity Co.,* 32 F.3d 851, 862 (3d Cir. 1994).

26.      The facts of this case are quite different from those involved in *Asia Global* and

the other reported cases for two reasons.

27.      First, there was no possibility of Greenville or Mr. Danby monitoring Mr.

Jannuzzio's communications with his prior and current legal counsel using his Greenville email

account during the one-year period when those communications occurred. Mr. Jannuzzio (not his former employer Greenville) had control over the Greenville email accounts at that time. In *Asia Global* and the other reported cases, the employer had the technical capacity to monitor and read the employee's workplace emails at any time. Here, there was no chance that Greenville or Mr. Danby could have examined Mr. Jannuzzio's emails using his Greenville email account until Mr. Jannuzzio relinquished his control over the Greenville email accounts in compliance with the December 30, 2022 Discovery Order.

28.     There is a second fundamental distinction between this case and the *Asia Global* line of cases.  In the reported cases, the employees had the undisputed right to use their workplace email accounts, at least for employment-related purposes. The issue in those cases was whether it was objectively reasonable for the employees to believe that their communications with their personal legal counsel would remain confidential.

29.     Here, by contrast, Greenville and Mr. Danby have a good faith legal argument that Mr. Jannuzzio had no right to use his Greenville email account for any purpose after his resignation in May 2021.  Mr. Jannuzzio argues in response that Mr. Danby's May 26, 2021 demand that he relinquish administrative control over the Greenville email accounts did not explicitly state that Mr. Jannuzzio should discontinue all use of his Greenville email account, but that is a strained and hypertechnical interpretation. Mr. Jannuzzio also argues that his status as a minority owner of Greenville with a 25% equity interest in the company in some way gave him the right to continue to use his Greenville email account. But there is nothing about the status of being a shareholder or holding an equity interest that conveys a legal right to use the company's email accounts.  And litigation between the parties was foreseeable, so there was a risk that a court might eventually order Mr. Jannuzzio to return control of the Greenville email accounts to

Greenville. If Greenville and Mr. Danby had not acquiesced in Mr. Jannuzzio's continued use of the Greenville email accounts, as they did by doing nothing about it for 18 months, the result on the privilege issue might well be different.

30.     Because of these factual distinctions, *Asia Global* and the cases that follow its approach do not provide clear guidance on the question of whether it was "objectively reasonable" for Mr. Jannuzzio to believe that his communications with his lawyers using his Greenville email account would remain confidential. But the *Asia Global* approach to "objective reasonableness" turns on the relative strictness or laxity of the employer's policies and procedures prohibiting the use of the company's email accounts for personal communications. Here, Mr. Jannuzzio's exclusive control over the Greenville email accounts for such a prolonged period after his resignation while Greenville and Mr. Danby sat on their hands and did nothing to regain control over them presents a record of employer laxity that justifies the conclusion that the emails are privileged.

31.      Greenville and Mr. Danby did nothing – absolutely nothing – for 18 months during which they allowed Mr. Jannuzzio to have exclusive and untrammeled access to the Greenville email accounts. Mr. Jannuzzio's belief at the time that he sent and received the emails that they would remain confidential proved to be not only reasonable, but absolutely correct for more than 18 months.  Greenville and Mr. Danby's prolonged inaction leads me to conclude that it was "objectively reasonable" for Mr. Jannuzzio to believe he could communicate in confidence with his attorneys using his Greenville email account.

32.     Indeed, the prolonged inaction by Greenville and Mr. Danby while Mr. Jannuzzio retained control over the Greenville email accounts is tantamount to acquiescence in Mr. Jannuzzio's continued use of his Greenville email account after his resignation. In my judgment,

that is sufficient to defeat Greenville and Mr. Danby's arguments on the issue of attorney-client privilege. This record of acquiescence does not justify granting Greenville and Mr. Danby access to Mr. Jannuzzio's substantive communications with his lawyers using his Greenville email account. For all of these reasons, it was objectively reasonable for Mr. Jannuzzio and his attorneys to believe that these communications would remain confidential and, therefore, the emails are protected by the attorney-client privilege.

33.      But not all of the documents listed on the privilege log are privileged. In fact, most likely only a few of the documents are protected by attorney-client privilege. The Defendants stated in their answers and objections to Greenville's requests for admissions that they used their access to the Greenville email accounts to forward non-privileged Greenville emails to their lawyers for use in evaluating potential counterclaims and other issues. *See* Defendants' Objections and Answers to Plaintiffs' Requests for Admission Nos. 105 and 108.

34.      Mr. Jannuzzio testified during his deposition on April 12, 2023 that "the reason why the Defendants accessed Greenville's records post departure … was to provide information to their counsel to refute allegations and claims made by Greenville". *See* April 12, 2023 letter by defense counsel at page 4 fn. 1.

35.      Counsel for the parties informed me on April 13, 2023 that Mr. Jannuzzio also testified during his deposition that he accessed the Greenville email accounts after his resignation based on advice by his lawyers that his status as a 25% owner of Greenville gave him the legal right to do so. If any of the emails listed on the privilege log pertain to advice on why it was permissible to continue to access the Greenville email accounts, they are not privileged and must be produced. Counsel for the Defendants appears to recognize this, but to avoid any doubt or dispute I am addressing the issue here. Emails pertaining to that advice are not privileged for two

-12-

reasons. First, Mr. Jannuzzio and his counsel consciously chose to reveal that advice during the deposition as legal justification for accessing the Greenville email accounts after their resignations, which is the conduct that is the basis for certain of Greenville's statutory claims against the Defendants. The fact that the advice has been revealed to Greenville and the Third-party Defendants obviously means that it is no longer privileged, Moreover, if as is plainly the case, the Defendants intend to put that advice of counsel in issue as a partial or complete defense to those federal statutory claims, they cannot withhold production of documents pertaining to that advice. *See Rhone-Poulenc Rorer v. Home Indemnity Co.,* 32 F.3d 851, 864 (3d Cir. 1994).

36.     There is a second reason why probably only a few of the documents on the privilege log are actually privileged. By my count, 67 of the 102 documents listed on the privilege log appear to be emails in which Mr. Jannuzzio merely forwarded to his lawyers without any comment or question non-privileged emails that Mr. Jannuzzio obtained from the Greenville email accounts over which he retained control. I have not reviewed the documents *in camera,* but the descriptions in the privilege log strongly suggest that the majority of the emails were mere transmittals of non-privileged Greenville documents with no substantive comments or questions by either the client or the lawyers.

37.     To the extent that Mr. Jannuzzio or the other Defendants did that, the non-privileged Greenville emails did not become privileged merely because Mr. Jannuzzio or the other Defendants funneled them to their lawyers. The transmittal emails by the client, so long as they contain no attorney-client communications other than the transmittal, are likewise not privileged. On the other hand, emails between Mr. Jannuzzio or the other Defendants and their lawyers containing communications *about the forwarded or attached emails* or about legal advice would be privileged.

38.     Mr. Jannuzzio and the other Defendants have no legitimate complaint that production of these transmittal emails, forwarded emails and attachments may enable Greenville and Mr. Danby to guess that the Defendants and their lawyers regarded the forwarded and attached emails as relevant. Indeed, as noted above, Mr. Jannuzzio has already testified that is why he accessed the Greenville email accounts and sent Greenville documents to his lawyers. The non-privileged emails that Mr. Jannuzzio obtained using his access to the Greenville email accounts would have been discoverable if Mr. Jannuzzio had simply forwarded them to himself at another email address. It changes nothing that he chose instead to send these non-privileged emails to his lawyers.

### C.     The Work Product Doctrine

39.     Defendants have asserted the work product doctrine as a basis for precluding discovery of 10 of the 102 documents listed on the privilege log. As noted in paragraph 4 above, these communications by Mr. Jannuzzio and his lawyers after his resignation from Greenville plainly occurred in anticipation of the litigation that ultimately ensued between the parties in this action and the related cases.  Indeed, it is obvious that the very reason for the attorney-client relationship between Mr. Jannuzzio and his lawyers during this time period was to prepare for (or settle) claims that might result in litigation.

40.     These communications occurred *because of* the very real potential for litigation between Mr. Jannuzzio, Greenville and Mr. Danby, which is sufficient to establish the applicability of the work product doctrine under Rule 26(b)(3) of the Federal Rules of Civil Procedure. *See In re: Avandia Marketing, Sales Practices and Product Liability Litigation,* 2009 WL 4641707 (December 7, 2009 E.D. Pa.) (Rufe, J.), *citing Martin v. Bally's Park Place Hotel & Casino,* 983 F.2d 1252, 1260-61 (3d Cir. 1993).  Even if some of the emails did not contain

"mental impressions" of Mr. Jannuzzio or his counsel concerning the strength or weakness of particular claims or defenses, the fact that these communications occurred *because of* anticipated litigation means that Greenville and Mr. Danby cannot obtain access to them in discovery without showing: (1) a substantial need for the discovery; and (2) the absence of any other way to obtain necessary information without undue hardship.  *See* Fed. R. Civ. P. 26(b)(3). Even if they could make that showing as to particular emails, Rule 26 (b)(3) would require the Court to protect the "mental impressions" and "opinions" of Mr. Jannuzzio and his counsel from discovery. *Id*.

41.     Here, Greenville and Mr. Danby cannot establish that they have any need – much less the requisite substantial need – to see emails exchanged between Mr. Jannuzzio and his counsel about this dispute.

42.     The critical question for purposes of the applicability of the work product doctrine is whether Mr. Jannuzzio waived or otherwise lost the protection of the work product doctrine by conducting these litigation-related communications on his Greenville email account.  In the *Asia Global* opinion, the Court noted that different legal standards may govern waivers and other losses of protection from discovery under the attorney-client privilege and the work product doctrine. For example, the Court in *Asia Global* stated that unlike attorney-client privilege, work product protection does not depend upon an expectation or intent that the communication will remain confidential.  *See Asia Global, supra,* 322 B.R. at 263.

43.     Courts have stated that the question of waiver of work product protection depends upon whether the party has voluntarily disclosed the work product material to his or her adversary. *See, e.g., Westinghouse Elec. Corp. v. Republic of Phillipines,* 951 F.2d 1414, 1424 (3d Cir. 1991). Counsel for Mr. Jannuzzio interprets that "voluntary disclosure" language to

mean that Mr. Jannuzzio's email communications with his counsel using his Greenville email account must be protected from discovery under the work product doctrine because he did not voluntarily disclose them to his adversaries Greenville or Mr. Danby. Instead, the December 30, 2022 Discovery Order compelled him to return administrative access to (and control over) the Greenville email accounts to Greenville and Mr. Danby.  Although the Defendants ultimately did not contest that aspect of the December 30, 2022 Order, they did oppose it initially and for a time during the December 29, 2022 hearing. It was reasonable for them to conclude during the hearing that, even if they had continued their opposition to it, I would ultimately have entered an order requiring Mr. Jannuzzio to relinquish control over the Greenville email accounts and return that control to Greenville and Mr. Danby.

44.     But such a literal reading of the "voluntary disclosure" standard for waiver of work product protection does not make sense and it is not the correct legal standard. Courts have held that, if a party engages in conduct that "substantially increases" the opportunity for his or her adversary to obtain information that would otherwise be protected by the work product doctrine, that may constitute a waiver of work product protection.  *See, e.g., United States v. Stewart,* 287 F. Supp. 2d 461, 468 (S.D.N.Y. 2003) (citing cases and other authorities).

45.     For the reasons previously explained in my discussion of the attorney-client privilege, I have concluded that it was objectively reasonable for Mr. Jannuzzio to believe that his email communications with his lawyers using his Greenville email account would remain confidential. I conclude for the same reasons that he did not "voluntarily disclose" that information to his adversaries, and so the protection afforded by the work product doctrine remains intact.

46.     Here again, work product protection does not extend to the non-privileged Greenville emails that Mr. Jannuzzio transmitted to his lawyers as attachments or as forwarded emails. It is true that the Defendants may have forwarded these non-privileged Greenville emails and other documents to their lawyers "because of" this potential litigation, but that does not mean the non-privileged attachments or forwarded emails are protected work product. As noted above, if a litigant uses a key to go into his or her opponent's office, copies documents that are located there and gives or transmits those documents to his or her lawyer, that does not make the documents taken from the opponent's office protected work product. Here, Mr. Jannuzzio's use of his control over the Greenville email accounts to obtain and send non-privileged Greenville documents to his lawyers is the digital equivalent of such an office visit.

47.     The result should be precisely the same with respect to transmittal emails to the lawyer that merely attach or forward non-privileged emails obtained from an opponent's email server. Indeed, production of transmittal emails containing no substantive communication by the client or the lawyer will ultimately disclose only would appear on a privilege log prepared in accordance with Rule 26(b)(5), which must describe the dates and recipients of the communications and must provide a brief description of the reason why the communication is privileged.

### D.     Conclusion and Order

48.     For all of these reasons, I have concluded that the emails exchanged between Mr. Jannuzzio and his prior and current counsel using his Greenville email account are protected by the attorney-client privilege and the work product doctrine with two exceptions. First, Defendants must produce emails in which Mr. Jannuzzio merely transmitted to his lawyers (without any question or comment by the client or the lawyer) non-privileged emails or other

documents that he obtained from the Greenville email accounts. Defendants must also produce the forwarded emails and the attachments. Second, if any of the emails on the privilege log pertain to the legal advice that Mr. Jannuzzio revealed during his deposition regarding why he allegedly believed that he had the legal right to continue to access the Greenville email accounts after his resignation, those emails are not privileged and must be produced.

49.     Defendants are ordered to review the documents on the privilege log and produce within 10 days of the date of this order the transmittal emails, forwarded emails and attachments that are not protected by the attorney-client privilege or the work product doctrine.

_____
JOSEPH C. CRAWFORD
SPECIAL MASTER

Dated:  April 14, 2023